**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

THOMAS H.,
                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY
              Defendant.

Civil Action No.: 24-8183

**OPINION & ORDER**

**CECCHI, District Judge.**

I.      <u>**INTRODUCTION**</u>

Before the Court is the appeal of Thomas H.[1] ("Plaintiff") seeking review of a final decision by the Commissioner of Social Security ("Defendant") denying his application for adult Childhood Disability Benefits ("CDBs") pursuant to Title II of the Social Security Act ("SSA"). ECF No. 1; *see also* ECF No. 14 ("Br."). Defendant opposed the appeal. ECF No. 16 ("Opp."). This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is vacated and remanded for further proceedings.

II.      <u>**BACKGROUND**</u>

Plaintiff is a 45-year-old male with a high school education who previously worked as a clerical worker. ECF No. 8 ("R.") at 19–20. Plaintiff filed for CDBs on January 14, 2020, and February 9, 2021, claiming disability beginning March 1, 1988, before he attained the age of 22 as required to receive CDBs as an adult. R. at 17; *see also* 20 C.F.R. 404.350(a)(5). He asserted

---

[1] Pursuant to District of New Jersey standing order 2021-10, "any non-governmental party will be identified and referenced solely by first name and last initial" due to privacy concerns present in social security cases. D.N.J. Standing Order 2021-10; *see also Bryan S. v. Kijakazi*, No. 20-cv-11145, 2022 WL 2916072, at *1 n.1 (D.N.J. July 25, 2022).

that he has been unable to engage in substantial gainful employment due to osteogenesis imperfecta, a disorder known as "brittle bone disease" that he has had since birth. *See* R. at 19, 21–22; Opp. at 1.

Plaintiff's application was denied initially and again on reconsideration. R. at 17. Following a subsequent hearing, the ALJ concluded in a decision issued August 18, 2023, that Plaintiff was not disabled and denied his application. R. at 17–24. The Appeals Council denied Plaintiff's request for review on May 30, 2024. R. at 1–6. Plaintiff then brought the instant appeal on July 31, 2024. ECF No. 1.

### III.   LEGAL STANDARD

#### A.  Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and substantiated by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383

2

U.S. 607, 620 (1966)).  In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

### B.  Determining Disability

In order to be eligible for benefits under the SSA, a claimant must show that he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Considering the claimant's age, education, and work experience, disability is evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. *Id.* §§ 423(d)(2)(A); 1382c(a)(3)(B). A claimant is disabled for SSA purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 1382c(a)(3)(B).

Decisions regarding disability are made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)).  Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3); 1382(a)(3)(D).

### C.  Sequential Evaluation for a Continuing Disability

The Social Security Administration follows a five-step, sequential evaluation to determine whether a claimant is disabled under the SSA. 20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262. Second, if the claimant is not engaged in such activity, the ALJ determines whether the claimant has any impairments severe enough to limit his ability to work. *Id.* Third, if he has any severe impairments, the ALJ considers the medical evidence to determine whether the impairment or combination of impairments is included in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listings"). If the claimant's impairment(s) medically equal one of the Listings, this results in a presumption of disability. *Sykes*, 228 F.3d at 262. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite his impairment. *Id.* at 263. Fourth, the ALJ must consider whether the claimant's RFC is adequate to perform his past relevant work. *Id.* Fifth, if his RFC is not sufficient to perform past work, the ALJ must determine whether there is other work in the national economy the claimant can perform. *Id.*

The evaluation continues through each step unless it is ascertained at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the ultimate burden of establishing steps one through four of this test. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019). The burden shifts to the Commissioner at step five to prove that the claimant can perform a job that exists in the national economy. *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004).

IV.     **DISCUSSION**

    **A. Summary of the ALJ's Decision**

Plaintiff sought to obtain adult CDBs, which required that he be over 18 years old and have a disability that began before the age of 22. *See Anastasia S. v. Kijakazi*, No. 20-15195, 2021 WL 4206295, at *1 (D.N.J. Sept. 15, 2021) (20 C.F.R. § 404.350(a)(5)).

After considering the evidence and following the five-step analysis outlined in 20 C.F.R. § 404.1520(a), the ALJ found that Plaintiff was not disabled prior to the age of 22. R. at 23–24.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 1, 1988. R. at 19.

At step two, the ALJ found that Plaintiff had a nonsevere medically determinable impairment of osteogenesis imperfecta. R. at 19–23. Specifically, the ALJ concluded that there was insufficient evidence to assess the severity of Plaintiff's impairment prior to 2003 when Plaintiff turned 22. R. at 21–23. Accordingly, the ALJ found that Plaintiff was not disabled before reaching the age of 22 and was therefore not entitled to receive CDB. R. at 23–24.

## B. Plaintiff's Argument on Appeal

Plaintiff argues on appeal that the ALJ's decision to terminate the sequential evaluation at step two was not supported by substantial evidence. Specifically, he contends that the ALJ was wrong to conclude that his osteogenesis imperfecta was nonsevere before age 22 merely because there was no medical evidence before that time, as Plaintiff was born with a genetic disorder that will never improve. Br. at 19–23. Further, Plaintiff argues that the ALJ did not adequately explain this decision. *Id.* at 12–13. He also emphasizes that step two is a "de minimis" screening device used to weed out only the most baseless claims and that he cleared that low threshold. *Id.* at 9–12; *see also McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360–61 (3d Cir. 2004) (recognizing that "step two is to be rarely utilized as basis for the denial of benefits" and "the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close

5

scrutiny"). Beyond requesting that the Court vacate the ALJ's decision, Plaintiff also requests that the Court order the ALJ to obtain testimony from an orthopedic medical expert on remand "to educate the next ALJ as to the origin, import and effects of plaintiff's [osteogenesis imperfecta]." Br. at 23

### C.      Discussion

#### i.      *The Court Will Vacate the ALJ's Decision and Remand*

The Court will vacate the ALJ's decision and remand for two reasons. First, the ALJ's conclusion that the "objective medical and other evidence of record . . . contain[ed] no evidence" concerning Plaintiff's condition before he turned 22 cannot be reconciled with the record. R. at 22–23; *see also Knauss v. Comm'r of Soc. Sec.*, No. 17-437, 2018 WL 1535213, at *4 (D.N.J. Mar. 29, 2018) (noting that although an ALJ need not discuss "every tidbit of evidence included in the record," he must still "consider all pertinent medical and non-medical evidence" and explain how that evidence figured into his decision (citations omitted)). From the ages of 9 through 18, Plaintiff received SSI disability benefits based on osteogenesis imperfecta. R. at 21. To obtain these benefits, the Commission would have had to conclude that Plaintiff's osteogenesis imperfecta was a "medically determinable physical or mental impairment, which result[ed] in marked and severe functional limitations." *Garcia ex rel. Marrero v. Comm'r of Soc. Sec.*, 260 F. App'x 436, 437 (3d Cir. 2008) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)). At the age of 18, Plaintiff received a $100,000 insurance settlement and was taken off of SSI disability for four years, not because he was no longer disabled, but because he no longer met the poverty requirement to receive those benefits. *See* R. at 21; Br. at 4, 20. And in any event, Plaintiff was again awarded disability benefits for the same condition–osteogenesis imperfecta–after he turned 22 once he had exhausted those funds. R. at 21.

The record further indicates that Plaintiff has suffered from osteogenesis imperfecta since he was born. Plaintiff described osteogenesis imperfecta as "a genetic defect from birth" and explained that "his bones have weakened over time" and that there is "nothing doctors can do for him." R. at 21–22. His mother likewise explained that he was "born" with this condition and always had "restrictions in all tasks." *Id.* at 21. An orthopedist that evaluated Plaintiff in 2021 also indicated that osteogenesis imperfecta was a "lifetime genetic disorder." *Id.* at 22. Although there are no medical records from the period between ages 18 and 22, Plaintiff testified that his "condition never changed" during that time. *Id.* at 22. Given all of this information concerning Plaintiff's condition before the age of 22, the ALJ's statement that the record contained "no evidence prior to November 2003 [when Plaintiff turned 22]" suggests that he overlooked "probative evidence that supported Plaintiff's claim without adequately explaining [his] reasons for doing so." *Barbiero v. Berryhill*, No. 16-4323, 2017 WL 2986294, at *1 (E.D. Pa. July 13, 2017); *see also Diggin v. Saul*, No. 19-22, 2019 WL 3495593, at *10 (E.D. Pa. July 31, 2019) ("An ALJ may not reject pertinent or probative evidence without explanation." (citation omitted)).

Second, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent prior to February 28, 2003, when he attained age 22." R. at 22. Yet, the ALJ's subsequent analysis largely only discusses evidence from after Plaintiff turned 22, with the exception of mentioning a knee surgery Plaintiff underwent at age 14. *Id.* at 22–23. Thus, it is not clear how Plaintiff's statements, including that his "condition never changed" between the ages of 18 and 22, *id.* at 22, were inconsistent with any evidence of his symptoms from before he turned 22. If the ALJ found Plaintiff's testimony concerning his condition prior to age 22 not credible, he did not fully explain that determination, which limits the Court's ability to review the decision. *See Williams v. Comm'r of Soc. Sec.*, No. 12-5637, 2013

7

WL 4500335, at \*16 (D.N.J. Aug. 21, 2013) (remanding where the ALJ did not "identify any particular aspects of [the claimant's] testimony that lack[ed] credibility, nor did he explain why he found [the claimant's] credibility to be lacking"); *Swinson v. Kijakazi*, No. 21-11, 2022 WL 4120153, at \*9 (M.D. Pa. Sept. 9, 2022) (remanding where the ALJ did not explain "why and to what extent [the plaintiff's hearing testimony] was discounted").

In light of the two deficiencies identified above, the Court cannot say that the ALJ's decision was supported by substantial evidence and therefore will vacate the decision and remand for further proceedings.[2]  *See Diggin*, 2019 WL 3495593, at \*10 ("Inadequate discussion that leaves a court to speculate on what evidence led the ALJ to the conclusions set forth in the decision precludes any meaningful judicial review."); *Knauss*, 2018 WL 1535213, at \*5 (remanding for failure to address all pertinent record evidence).

ii.    *Request for a Medical Expert on Remand*

An ALJ is required to solicit expert medical opinions only in certain specific situations. *See Brown v. Colvin*, No. 16-94, 2017 WL 2547304, at \*5 (D. Del. June, 13 2017); *see also Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 910 n.8 (3d Cir. 2014) (listing the three instances where a medical expert's opinion is required).  Otherwise, federal regulations provide an ALJ with discretion to call a medical expert to assist in rendering a decision.  *See* 20 C.F.R. § 404.1513a(b)(2) ("[ALJs] may . . . ask for medical evidence from expert medical sources.").  As Defendant points out, the ALJ was not required to obtain expert testimony here.  Opp. at 7; *see also Cooper*, 563 F. App'x at 910 n.8.

---

[2] Further, as the "Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny," *McCrea*, 370 F.3d at 360–61, vacating the ALJ's decision and remanding for further proceedings is warranted here.

Plaintiff requests that the Court order the ALJ to obtain the testimony of an orthopedic medical expert of the Commission's choice on remand "to educate the next ALJ as to the origin, import and effects of plaintiff's [osteogenesis imperfecta]." Br. at 23. He contends that this is necessary because the Social Security Administration allegedly lost medical records relating to Plaintiff's disability application from when he was a child. *See id.* at 15–16 (citing R. at 63).

In light of the discretion normally afforded to ALJs in this area, and the absence of any authority provided by Plaintiff to support his request, the Court declines to order the requested testimony. *Sherry S. v. King*, No. 24-2345, 2025 WL 378918, at *7 (E.D. Pa. Feb. 3, 2025) ("While the regulations permit the ALJ to consult a medical expert to review the evidence, she was not required to seek out such medical expert testimony."). Nevertheless, to the extent that there is any indication that the Social Security Administration may be responsible for losing records that could have provided information about Plaintiff's disability from before he turned 22, the Court recommends that the ALJ solicit the testimony of an orthopedic medical expert. *See Castro v. Astrue*, No. 11-2516, 2012 WL 2005138, at *1 n.1 (E.D. Pa. June 5, 2012) (recommending "that a medical expert be present at the hearing to assist the ALJ in evaluating Plaintiff's medical history"). This may be helpful in evaluating the severity of Plaintiff's asserted "lifetime genetic disorder" before the age of 22 despite the absence of other medical records.[3]

## V.    **CONCLUSION**

**Accordingly, IT IS** on this 12th day of March, 2026,

**ORDERED** that Plaintiff's appeal (ECF No. 1) is **GRANTED**; and it is further

---

[3] Defendant argues that the Court should not remand for failure to develop the record because Plaintiff's counsel before the ALJ certified that the record was complete. Opp. at 6–7 (citing R. 32–33). The Court is not, however, ordering remand because the ALJ failed to develop the record, but rather because of the deficiencies identified above. Thus, Defendant's argument does not persuade the Court to alter its conclusion.

9

**ORDERED** that the decision of the Administrative Law Judge is hereby **VACATED** and this matter is **REMANDED** for further proceedings in accordance with this Opinion; and it is further

**ORDERED** that the Clerk of the Court shall mark this matter as **CLOSED**.

**SO ORDERED**.

*s/ Claire C. Cecchi*

**CLAIRE C. CECCHI, U.S.D.J.**